NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3226

LARRY KEMP,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

_____

DECIDED: November 10, 2005

_____

Before MICHEL, <u>Chief Judge</u>, LOURIE, and LINN, <u>Circuit Judges</u>.

PER CURIAM.

## DECISION

Larry Kemp ("Kemp") appeals from a final decision of the Merit Systems Protection Board ("Board") affirming the Department of Veterans Affairs' ("Agency") 30-day suspension of Kemp. <u>Kemp v. Dep't of Veterans Affairs</u>, No. CH-0752-03-0671-I-1 (Jan. 21, 2004). Because the Board's affirmance of the Agency's 30-day suspension of Kemp was based on substantial evidence, was not contrary to law, and was not an abuse of discretion, we <u>affirm</u>.

BACKGROUND

Kemp was a Cemetery Caretaker Supervisor, WS-4754-8, at the Agency. On May 16, 2003, Kemp was given a Mid-Term Performance Review Counseling in which his supervisor, Jan Klahs, instructed Kemp to provide her a list of tasks that Kemp's subordinates will work on so that she could ensure he was learning how to supervise and delegate authority as opposed to performing too much of his subordinates' work. Kemp, slip op. at 2-4. On May 20, 2003, at 4:03 pm, Kemp entered the office of Ms. Klahs to report on his activities, as instructed in the counseling letter. Id. at 2. Because the duty day was already over, Ms. Klahs instructed Kemp to leave her office and return the next morning, but he refused. Id. According to Kemp, Ms. Klahs ordered him to leave her office four times, and he admits that he consistently refused to do so. Id. at 3. Kemp finally left, only after Ms. Klahs walked to her door and opened it for him to leave. Id. at 2.

On May 30, 2003, Kemp was given a notice of proposed suspension for disrespectful conduct towards a supervisor, based on the May 20, 2003 incident. The notice cited two additional prior incidents of disrespectful conduct.[1] On July 2, 2003, Kemp was given a 30-day suspension for the period July 21, 2003 through August 19, 2003. Id. at 4-5.

On July 18, 2003, Kemp appealed the suspension decision to the Board. The Board affirmed the Agency's action. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

---

[1] Kemp was issued a reprimand on October 3, 2000, for disrespectful conduct and was issued a 20-day suspension on March 24, 2002, for profane language and disrespectful conduct.

DISCUSSION

Standard of Review

Pursuant to 5 U.S.C. § 7703(c), we must affirm the Board's decision unless it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence. Abell v. Dep't of Navy, 343 F.3d 1378, 1382-83 (Fed. Cir. 2003). The burden of establishing reversible error in an administrative decision, such as the Board's, rests upon the petitioner. Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

Analysis

The Agency has the burden of proving its charges by a preponderance of the evidence. See 5 U.S.C. § 7701(c)(1)(B) (2000). In reviewing whether an agency's penalty decision is reasonable, the Board is required to ascertain whether the agency responsibly balanced the factors delineated in Douglas v. Veterans Administration, 5 M.S.P.R. 280, 305-06 (1981). See Gonzales v. Def. Logistics Agency, 772 F.2d 887, 889 (Fed. Cir. 1985). Here, the Board held that the Agency met its burden of proving its charges by a preponderance of the evidence and that the Agency's penalty decision was reasonable in light of the relevant Douglas factors.

Kemp asserts that the decision of the Board was erroneous and should be reversed. Kemp first argues that the Board failed to take into consideration statements from his witnesses. This argument is without merit. This court will not interfere with the conduct of proceedings by administrative agencies like the Board absent special circumstances. Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435

05-3226 3

U.S. 519, 543 (1978). Furthermore, "[t]he mere fact that a presiding official does not accept the assertions of an appellant or interpret testimony in the fashion appellant would desire does not constitute impropriety." Karapinka v. Dep't of Energy, 6 M.S.P.R. 124, 127-28 (1981). Kemp offers no evidence that the statements of his witnesses were tendered to the Board and were ruled inadmissible in his case, nor does he suggest how that evidence would have been relevant to the charges against him. Indeed, the Board credited Kemp's version of the facts, noting that there was virtually no discrepancy between the evidence provided by Kemp and the Agency. Based on Kemp's facts, including his admission that he disobeyed his supervisor's orders, the Board found that the Agency proved the charge of disrespectful conduct towards a supervisor by a preponderance of the evidence. Kemp, slip op. at 3. We conclude that Kemp has not come forward with special circumstances that would warrant reversal on this ground.

Kemp next argues that the Agency's evidence should not be credited because the Agency lied under oath. Credibility findings of an Administrative Judge are entitled to great weight in a Board proceeding. See Hambsch v. Dep't of Treasury, 796 F.2d 430, 436 (Fed. Cir. 1986). Kemp's credibility argument is based only on unsupported and general assertions. Kemp provides us with no basis for determining whether his assertions are true and does not point to any evidence to support his accusations that the Agency lied or fabricated evidence. The record demonstrates unequivocally that Kemp refused to leave his supervisor's office when ordered to do so and Kemp's concession that he disobeyed his supervisor's orders corroborates the Agency's version of the facts. Moreover, the Board determination rests on Kemp's version of the facts,

not the Agency's. We therefore conclude that Kemp has not met his burden of establishing that the Board's decision should be overturned on this ground.

Kemp also asserts that the Administrative Judge ("AJ") prejudged the issues against him based on a statement made by the AJ during pre-trial settlement discussions. In making a claim of prejudice or predetermination, Kemp must overcome a heavy presumption of honesty and integrity which accompanies administrative adjudicators. Oliver v. Dep't of Transp., 1 M.S.P.R. 382, 386 (1980); see Pascal v. United States, 543 F.2d 1284, 1288 (Ct. Cl. 1976). Kemp has failed to make such a showing. During pre-trial settlement discussions, the AJ informed Kemp that if Kemp confessed at trial to disobeying orders to leave his supervisor's office, then the AJ would find that the Agency had supported its charges of disrespectful conduct towards a supervisor. Kemp, slip op. at 5, n.3. The AJ explained, in a lengthy footnote, that he was merely informing Kemp of the legal ramifications of such a confession, should one be made at trial. Id. Furthermore, because the legal findings of the AJ are subject to appellate review by the Board and by this Court, the AJ noted that any alleged prejudice was harmless error. Id. Kemp has not come forward with evidence sufficient to support his allegation that the AJ's statement during pre-trial settlement discussions shows prejudgment. We therefore affirm the Board's holding that Kemp's allegations that the AJ prejudged the issues are insufficient to warrant reversal.

Kemp further contends that he is prejudiced by lack of a tape recording or transcript of the hearing in his case. He alleges that "absence of a recording or transcript makes [the AJ's] decision, factual determinations, and conclusions essentially un-reviewable." However, there is no evidence that the hearing tape is missing,

inaudible, or incomplete. Furthermore, we have held that unavailability of a transcript is not harmful per se and that, where such unavailability is not fatal to review, it does not require reversal of the Board's determination. See Harp v. Dep't of the Army, 791 F.2d 161, 163 (Fed. Cir. 1986). In this case, the AJ's opinion contains a detailed analysis that demonstrates careful consideration of the testimony and weighing of the evidence. Kemp has not indicated that the AJ's opinion omits evidence essential to his appeal, or how any supposed omission might affect his appeal. Thus, there being no showing that the testimony was in any way different from that related by the AJ in the initial decision, Kemp has not satisfied his burden of establishing prejudice with the requisite specificity to require that the Board's decision be overturned.

Kemp argues also that the Board erred in its disposition of his affirmative defense of retaliation. In order to make out an allegation of retaliation, Kemp must come forward with non-frivolous allegations that (1) he engaged in a protected activity; (2) his supervisor knew of that protected activity; (3) his 30-day suspension could have been retaliation under the circumstances; and (4) there was a genuine nexus between the retaliation and his 30-day suspension. See Webster v. Dep't of the Army, 911 F.2d 679, 689 (Fed. Cir. 1990).

Without support, Kemp contends that he has proven a pattern of abuse and conspiracy by the Agency to suspend him from federal service. Kemp only provides vague and unspecific allegations of retaliation without alleging that he engaged in any protected activity or that any protected activity contributed to his 30-day suspension. The Board held that Kemp had not placed evidence of any protected disclosure on the record and that, even assuming protected activity, the penalty was extremely lenient.

<u>Kemp</u>, slip op. at 5. The Board found that the Agency would have imposed the same penalty regardless as to protected activity, and that Kemp's conclusory, unsubstantiated allegations do not suffice to prove retaliation. <u>Id.</u> Furthermore, there is no indication in the record that Kemp's supervisor had any knowledge of protected activity or that the 30-day suspension was the result of a retaliatory motive. Accordingly, we affirm the Board's holding that Kemp failed to establish that the Agency action was the result of retaliation.

Kemp next challenges the severity of the penalty, contending that the Board should have mitigated his penalty by taking into consideration that he showed remorse. Kemp cites to no authority to support his claim that the penalty was too harsh. We have held that the determination of the proper disciplinary action to be taken to promote the efficiency of the service is a judgment call best left to the discretion of the agency. <u>See Hunt v. Dep't of Health & Human Servs.</u>, 758 F.2d 608, 611 (Fed. Cir. 1985); <u>Gonzales v. Def. Logistics Agency</u>, 772 F.2d 887, 889 (Fed. Cir. 1985). Deference is given to an agency's judgment unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." <u>Parker v. United States Postal Serv.</u>, 819 F.2d 1113, 1116 (Fed. Cir. 1987) (internal citations omitted); <u>see also Guise v. Dep't of Justice</u>, 330 F.3d 1376, 1382 (Fed. Cir. 2003).

The Board held that the Agency's penalty decision was reasonable in light of the relevant <u>Douglas</u> factors. Although the Board did not discuss every factor, not all of the factors are pertinent in every case. <u>See Douglas</u>, 5 M.S.P.R. at 306. In reviewing the penalty imposed upon Kemp, the Board found that this is Kemp's third offense of the

same type of misconduct and that Kemp "made it clear that he felt that he was justified in disobeying orders if he did not agree with them." Kemp, slip op. at 4. The Board also found that Kemp is "devoted to his job" and "was a very good line worker," but has not learned how to be a supervisor. Id. Based on the record, the Board concluded that the Agency's decision to suspend Kemp for 30-days for the charged conduct was not an abuse of discretion and that the penalty was "well within the tolerable limits of reasonableness." Id. at 3-5. For the foregoing reasons, we conclude that the Board properly determined that the penalty of suspension was reasonable, and therefore affirm the Board's decision.

We have considered the remainder of Kemp's arguments and find them to be without merit.